4 F.3d 995
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard C. VAUGHAN, Plaintiff-Appellant,
v.
EQUICOR SEVERANCE PAY PLAN; Equicor, Inc.;
Equicor-Equitable HCA Corporation, Defendants-Appellees.
 No. 92-6209.
 United States Court of Appeals, Sixth Circuit.
 Aug. 24, 1993.
 
 Before: MARTIN and SUHRHEINRICH, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Richard C. Vaughan appeals the bench judgment for EQUICOR, Inc. in this action to receive severance pay under the Employment Retirement Income Security Act, 29 U.S.C. Sec. 1001 et seq. Vaughan claims that he is entitled to $125,000 in severance pay. Equicor refuses to provide any severance pay because EQUICOR does not believe that Vaughan is covered by EQUICOR's severance pay plan. We affirm.
 
 
 2
 Vaughan was employed as Vice President of Insurance Accounting and Public Offering with EQUICOR at the beginning of 1990. On March 29, 1990, EQUICOR was purchased by the CIGNA Corporation. On May 1, CIGNA personnel sent Vaughan a memorandum that informed him that his division was being reviewed by an integration team. The letter stated in relevant part:
 
 
 3
 During this period of review ... we would like to encourage you to remain in your current position until approximately December 1, 1990--a date by which we are currently projecting the transition will be completed. You will be notified on or about October 1, 1990, of the date after which your services will be no longer needed (release date).... If you voluntarily leave the employ of the company prior to the earlier of December 1, 1990 or your release date, you will not be eligible for [a] retention bonus [of up to twenty-five percent of base salary] or for any severance benefits.
 
 
 4
 On May 10, Dennis Whimpey, a corporate officer at EQUICOR, orally notified Vaughan that Vaughan's division would be moved from Nashville. On June 7, Vaughan wrote a letter to Whimpey to request formal written notice that his job was being abolished so that he could receive severance benefits. Before he received the desired response, Vaughan secured an offer of employment from the Lincoln National Life Insurance Company in Fort Wayne, Indiana. On July 5, Vaughan provided Whimpey with written notice of his intention to resign two weeks later from his post at Equicor. Vaughan's last day of work at Equicor was July 20.
 
 
 5
 EQUICOR and CIGNA implemented three successive severance pay plans in 1990. At the beginning of the year, EQUICOR had in place a "Job Abolishment Policy" that provided severance pay based on years of service after an employee received "formal written notice that their job was to be abolished." Relocation of a work site more than thirty-five miles further from home constituted a form of abolishing a position. Under this policy, the company was expected to provide verbal notice as well as at least thirty days formal written notification regarding any job abolishment. Employees who voluntarily resigned after receiving written notice of a status change remained eligible for severance pay beginning at their voluntary termination date. In the first plan, EQUICOR reserved the rights to interpret, amend, and terminate the severance pay plan at its sole discretion.
 
 
 6
 A second severance pay plan was developed in May. On May 3, CIGNA informed Faye McMahon, EQUICOR's Director of Human Resources, that it had created a "Job Elimination Policy" that would supersede the first policy as of May 7. Under the new policy, employees were entitled to six weeks written notice of a job elimination. This policy limited eligibility for severance pay to any employee who did not resign before receiving notice or within the six weeks after receiving notice. The second policy did not identify a plan administrator or reserve for the company the right to interpret provisions of the plan. The second policy also did not designate a schedule for the amount of severance pay to be paid to employees. CIGNA directed McMahon to apply the severance pay amounts that had been designated in the first policy.
 
 
 7
 In August, CIGNA created a third plan in an attempt to combine the severance pay schedules of the first policy with the eligibility criteria of the second policy. Employees remained entitled to six weeks written notice of termination of employment. Employees who retired six weeks after receiving written notice were entitled to severance pay beginning on the date of the voluntary termination. Employees were entitled to severance pay if their jobs were eliminated as a result of a reorganization, consolidation, office closing, or work force reduction.
 
 
 8
 On September 27, 1990, Vaughan filed a complaint alleging that CIGNA unlawfully refused to pay him severance pay under either the Job Abolishment Policy or the Severance Pay Plan. On July 17, 1991, CIGNA moved for summary judgment on the bases that the Severance Pay Plan superseded the Job Abolishment Policy as of May 7 and that Vaughan was not entitled to severance pay because he resigned before receiving written notice of the elimination of his job. The district court denied this motion. After a bench trial, the district court entered judgment for CIGNA on August 19, 1992. The district court held that despite Vaughan's requests for notice that his job was abolished, Vaughan did not receive formal written notice as required by all three policies. Therefore, according to the district court, Vaughan was not entitled to severance pay.
 
 
 9
 It is undisputed that all of the policies constitute "employee welfare benefit plan[s]" pursuant to ERISA. 29 U.S.C. Sec. 1002(1) states that a welfare benefit plan under ERISA is:
 
 
 10
 any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants ... (A) ... benefits in the event of ... unemployment....
 
 
 11
 Our starting point for determining Vaughan's right to severance pay is to determine which plan was in effect at the time of Vaughan's resignation. This issue is a question of fact. Pursuant to Fed.R.Civ.P. 52(a), we will reverse the district court's factual findings only when they are clearly erroneous. A finding of fact will only be clearly erroneous when, although there is evidence to support it, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (citation omitted). As found by the district court, the third plan was not in effect because it was not finalized and distributed until the month after Vaughan resigned. The district court properly determined that the second plan was effective in July. In the first severance pay plan, EQUICOR reserved the right to interpret, amend, or terminate the policy. An employer who reserves the right to alter a plan may exercise that right. Musto v. American General Corporation, 861 F.2d 897, 907 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989). The instruction given to EQUICOR's Director of Human Resources to adopt the second plan in May served to terminate the first severance policy. The fact that the first plan mentioned some issues left unaddressed in the second plan did not render the second plan ineffective. Consequently, the district court decision was not clearly erroneous, and we therefore review whether Vaughan was eligible for severance pay under the second severance pay plan.
 
 
 12
 The ultimate issue in this case is whether Vaughan received notice of job elimination as required for severance pay benefits. Notice is defined in the second severance pay plan as "[t]he formal, advance, written notice of job elimination." Vaughan contends that the memorandum dated May 1 served as the requisite notice. The district court found that this memorandum did not constitute written notice within the meaning of the plan. The district court reasoned that the memorandum did not specify a date of termination or a notification period. However, the second plan's definition of notice does not require the announcement of a termination date or notification period. As a result, the district court's reasoning is flawed. Unlike the first plan, the language of the second plan did not preserve for EQUICOR the sole right to interpret the policy. Consequently, Vaughan's interpretation of what was required for "notice" may be considered. By analogy, in a question of contract interpretation, we look to the performance of the parties to interpret the contract. Vaughan did not believe that the memorandum dated May 1 was a "formal, advance, written notice of job elimination." This fact is evidenced by Vaughan's letter dated June 7 to Whimpey in which Vaughan requested written notice that his job was being eliminated. Vaughan continued to request the appropriate notice, but he resigned before receiving the formal, written notice that he knew that he had not yet received. Therefore, we conclude that Vaughan did not receive the notice of job elimination that would have entitled him to severance benefits.
 
 
 13
 For the foregoing reasons, we affirm.